[No. 794-1. Division One—Panel 1. December 20, 1971.]

THE CITY OF SEATTLE, *Respondent,* v. WILLIAM ALLEN ARENSMEYER, *Appellant.*

*Phil Mahoney* and *Roderick D. Dimoff,* for appellant.

*A. L. Newbould, Myron L. Cornelius,* and *J. Roger Nowell,* for respondent.

WILLIAMS, J.—The defendant, William Allen Arens-meyer, was charged in the municipal court of Seattle with willfully opposing, hindering or delaying a member of the police force in the performance of his official duty. After trial and conviction the defendant appealed to the superior court where the case was tried de novo to a jury, again resulting in his conviction. His appeal to this court followed.

The facts essential to an understanding of the issues on appeal are these: February 17, 1970, appellant, who was then working for the city as a surveyor, was traveling in a truck with other members of a city surveying crew. As the truck approached the Federal Courthouse in downtown Seattle, appellant asked to be and was let out. There was a large crowd of people engaged in a demonstration in the vicinity of the courthouse. Appellant became involved with the police who were in attendance—just how is disputed—and was arrested.

For the city, the key witness was a police officer who testified that his squad was ordered to move the demonstrators back. He further testified that while doing so appellant, facing in the direction of the officer, chanted, "Get the pig, get the pig, get the pig." The officer went over and stood in front of appellant in a port-arms position and ordered him to move out of the area. Appellant thereupon jumped at the officer, grabbed his baton and swung at his face. Another officer then hit appellant who went to the ground. The fellow officer testified that the officer and appellant were struggling when he first saw them and that he was the one who struck appellant. A police sergeant testified that he saw one of the officers holding his baton at a semi-port position with a man holding on to the central part of it, that the two were struggling when another officer came up from the right rear and struck the man, knocking him down.

On the other hand, appellant testified that when the policemen began to come down the street he turned and

started to walk away. He was poked in the back and when he turned around to ask why, he was hit on the head and remembers little from then on. He denied the truth of the officers' testimony. Two defense witnesses who were at the demonstration testified that they saw appellant thrown against a pillar by policemen. Another witness, a medical doctor and professor of medicine at the University of Washington who was serving as a corpsman at the demonstration, testified that he saw appellant grimacing with pain from a broken forearm. In his opinion, the blow causing the break was considerable. Appellant also introduced evidence that he was a pacifist, had a good character, and that he sustained broken ribs, loose teeth, and large bruises from the affair.

The principal question on this appeal, contained in 25 of 31 assignments of error, is whether the trial was fair and impartial in view of the statements of the trial judge. Some statements were made in the presence of the jury and others when the jury was retired.

To place the many comments, admonitions, and statements made by the trial judge during the course of the 3-day trial in their proper context would require republication of a greater part of the statement of facts. It is evident, however, from a reading of the record, particularly those portions which report the proceedings had in the absence of the jury, that the court intended from the outset to limit the trial to the narrow issue of whether or not appellant had hindered a police officer in the course of his duty. It is equally apparent that one of the main lines of appellant's defense was to show that the police hit and beat the demonstrators, including appellant, without provocation. An example of the opposing positions is the following which occurred while the appellant, on direct examination, was first describing the events:

> I turned back around and proceeded up back this direction. I thought a couple time about running, because there were people getting beat up on, and there was quite a bit of violence. THE COURT: The jury will strike and disre-

gard that as having nothing to do with this case, nothing at all to do with this case. Mr. Mahoney: I think it goes to show the state of mind. The Court: I have told you before we are not trying the Police Department or the Police Review Board. The thing about this case is resisting an order, you understand? Sometimes in the course of denying motions it may seem to you I am commenting on the evidence. I am not commenting to counsel. I am merely explaining what I have stated to counsel many times before.

Following this, the appellant testified to retreating, being poked in the back and then being struck down.

There was a brisk exchange between the court and counsel outside the presence of the jury over a defense offer of proof. The witness was the corpsman who had attended appellant following the incident. It is:

The Court: All right. Come on, Doctor, back on the witness stand. All right, ask him the question you want to ask him. Q (By Mr. Mahoney) Doctor, on this particular day in question at this demonstration, do you know of your personal knowledge, know whether or not police officers struck without provocation other persons there at that demonstration? The Court: Wait a minute—are you objecting? Mr. Cornelius: Yes, your Honor. I would object. The Court: Sustained. I don't know what that has to do with it, and how can he tell whether there is provocation?

Another significant episode occurred during final argument for the defense. We open the quotation as defense counsel is addressing the jury:

Now, there is another factor which I think we really need to consider, and we consider this in examining the officers' reactions to things. These officers that were down at the Olympic garage weren't even rookie cops. All 20 of them were taken right straight out of the Academy. That was their assignment then. They were training in the Police Academy, and Officer Sorenson was their training officer in the Academy, and the only man with any experience in the crowd of officers that were there.

Now, it is easy to see how you may have a bunch of officers right out of the Academy that may not react the same—

THE COURT: Just a minute—that isn't the testimony. They both testified as to how long they were police officers, and they had actually been in the Academy at this occurrence, but they had been police officers before that. Now, don't give the impression they were just policemen that were put in the Academy. Each of them testified, and the evidence indicates how long they had been police officers.

Proceed.

In studying each of the statements of the court in context, we have remembered that a trial court may not comment upon the evidence, Washington State Constitution, article 4, section 16, and that a defendant may be denied due process of law where the court's conduct has had the effect of intimidating a witness. *State v. Richard*, 4 Wn. App. 415, 482 P.2d 343 (1971). We are also mindful that it is our function to determine from the record whether appellant received a fair trial, not to decide if the court should have been more circumspect.

The trial court was correct in limiting the evidence to the issue of whether the appellant willfully hindered a member of the police force in the performance of his official duties. It was critical to the case that the jury not be misled into considering use of excessive force by the police, subsequent to the alleged hindrance, to be a defense to that hindrance.

The constitutional prohibition against comment by the court upon the evidence is clear. Its application is strict. *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968). The purpose of the provision "is to prevent the jury from being influenced by knowledge conveyed to it by the court as to the court's opinion of the evidence submitted." *Heitfeld v. Benevolent & Protective Order of Keglers*, 36 Wn.2d 685, 699, 220 P.2d 655, 18 A.L.R.2d 983 (1950).

As seen, the trial court interrupted counsel in his closing argument to say that he was mistaken as to the evidence. The evidence as to the age, training, and experience of the police officers who were directly involved was sketchy. Both were attending the police academy. One had been a

Seattle policeman for 11 months at the time of the trial, the other 16 months. The 20 officers in the squad led by Sergeant Sorenson had been sent from the academy to serve as building security for the Federal Courthouse during the demonstration.

Defense counsel at the time of the interruption was interpreting this evidence in a way favorable to the appellant. His reference to the officers as not being "even rookie cops" was an inference which could be drawn from that evidence. The court cannot compel counsel to reason logically or draw only those inferences from the given facts which the court believes to be logical. The rule is well stated in *Sears v. Seattle Consol. St. Ry.*, 6 Wash. 227, 233, 33 P. 389, 1081 (1893):

> It is the duty of the court, in all cases, to restrict the argument of counsel to the facts in evidence, and not to permit the opposite party to be prejudiced by any statement of facts not a part of the evidence. But counsel must be allowed some latitude in the discussion of their causes before the jury, and if they are not permitted to draw inferences or conclusions from the particular facts in evidence it would be impossible for them to make an argument at all. The mere recital of facts already before the jury is not an argument. There must be some reason offered for the purpose of convincing the mind, some inference drawn from facts established or claimed to exist, in order to constitute an argument.

*See also*, 1 J. Wigmore, Evidence § 30 (3d ed. 1940).

The proposition that the officers were inexperienced, which was the idea counsel was trying to convey, was an inference reasonably deducible from the facts and was as competent evidence as those facts themselves. *Chicago, M. & P. S. Ry. v. True*, 62 Wash. 646, 652, 114 P. 515 (1911). When the court interrupted and ruled as it did, it commented on the evidence by revealing what it believed the evidence to mean.

A comment on the evidence is deemed to be prejudicial and reversible error is committed, unless it affirmatively appears from the record that appellant could not

have been prejudiced by the trial judge's statement. *State v. Bogner*, 62 Wn.2d 247, 382 P.2d 254 (1963). We cannot say from our review of the record that appellant was not prejudiced. Although the defense was properly prevented from making alleged police brutality an issue, it certainly had the right to proceed on the theory that the police officers who were at the heart of the case were inexperienced. *See Heitfeld v. Benevolent & Protective Order of Keglers, supra.*

Appellant challenges the constitutionality of the Seattle Ordinance 16046, § 50 (Seattle City Code § 12.11.460) which reads:

> Resisting or hindering police. It shall be unlawful for any person to knowingly and wilfully resist, oppose, hinder or delay any member of the police force of the city of Seattle, or any peace officer or deputy in any department of city government, in the discharge of any official act or duty, or to neglect or refuse to obey any lawful order or direction of any such peace officer in the discharge of any lawful act or duty.

■ Appellant contends that the words "hinder" and "delay" are too vague to permit definition. We apply the test of *State v. Oyen,* 78 Wn.2d 909, 480 P.2d 766 (1971) in holding that the words have a meaning in common usage and understanding and are not vague.

Instruction No. 8, to which appellant took exception, advised the jury of the amount of force an officer may use in carrying out his duties. It also informed the jury that if the officer used excessive force after the hindrance had occurred, the force was not a defense but could be the basis for other means of legal redress. If the officer had used excessive force it would not mean that appellant's actions were thereby excused, but rather that he would have a civil cause for damages resulting from the illegal actions of the officer. *State v. Rousseau,* 40 Wn.2d 92, 241 P.2d 447 (1952). The instruction is therefore proper.

■ The assignments of error as to other instructions, given and refused, are not argued in the brief and will not

be considered. *State v. Conklin*, 79 Wn.2d 805, 489 P.2d 1130 (1971). The remaining assignments have been considered and are rejected.

Reversed for a new trial.

HOROWITZ, C.J., and UTTER, J., concur.