161 P.3d 361 (2007)
STATE of Washington, Respondent,
v.
Joshua James FROST, Petitioner.
No. 77444-7.
Supreme Court of Washington, En Banc.
Argued February 15, 2007.
Decided June 28, 2007.
*363 Dana M. Lind, Nielsen Broman & Koch PLLC, Seattle, WA, for Petitioner.
Andrea Ruth Vitalich, King County Prosecutor's Office, Seattle, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 The Sixth Amendment provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."[1] This right to counsel encompasses the delivery of closing argument.[2] Although trial courts possess discretion over the scope of closing argument, a limitation that goes too far may infringe upon a defendant's Sixth Amendment right to counsel. When a court's limitation of argument relates to a fact necessary *364 to support a conviction, the defendant's due process rights may also be implicated. Such constitutional infringements occurred in the present case when the trial court precluded petitioner Joshua Frost's counsel from arguing both that the State failed to prove accomplice liability as to Frost's robbery offenses and that Frost participated in these offenses under duress. Therefore, the trial court abused its discretion. However, under the particular circumstances of this case, the trial court's error may be deemed harmless. Accordingly, we affirm the decision of the Court of Appeals, although under a different rationale.

FACTS AND PROCEDURAL HISTORY
¶ 2 Frost's criminal conduct involved five discrete incidents over 11 days. First, on April 8, 2003, Frost, together with accomplices Matthew Williams and Alexander Shelton, robbed and burglarized the home of Lloyd and Verna Gapp. Frost acted as the driver and also entered the home with Williams and Shelton. Firearms were used.
¶ 3 On April 12, 2003, Frost acted as the driver for Shelton and Williams, who robbed a Taco Time restaurant while armed with firearms. Then on April 15, 2003, Frost, Williams, Shelton, and another man participated in the robbery of T and A Video. Frost again acted as the driver and also performed surveillance of the video store prior to the robbery. On April 17, 2003, Frost acted as the driver for Williams and Shelton, who robbed a 7/Eleven store at gunpoint. During this robbery, one accomplice threatened two customers in the store's parking lot with a gun. Immediately following this robbery, Frost drove Williams and Shelton to Ronnie's Market, which they also robbed using firearms. During the course of this robbery, employee Heng Chen was shot in the hand.
¶ 4 Frost, Williams, and Shelton were arrested on April 20, 2003. Several firearms, a cash register, safes, bank bags, and ski masks associated with the above offenses were found inside Frost's home. Frost made multiple confessions to the police regarding the above offenses, recordings of which were introduced at trial. Ultimately, Frost was charged with six counts of robbery, one count of burglary, one count of attempted robbery, and three counts of assault; most charges included firearms enhancements.
¶ 5 Prior to trial, Frost moved to suppress his statements to the police; the court denied his motion and admitted the confessions. Frost testified at trial. He generally admitted participating in the robberies but claimed he acted under duress.
¶ 6 During a discussion of the proposed jury instructions, Frost's counsel indicated he intended to argue both that the State failed to meet its burden as to accomplice liability and that Frost acted under duress in committing the charged robbery offenses. The State objected to this form of argument. The trial court ruled that defense counsel could not argue both theories in closing, citing State v. Riker, 123 Wash.2d 351, 869 P.2d 43 (1994). Verbatim Report of Proceedings (VRP) (Dec. 11, 2003) at 126-28. The court informed defense counsel that if he attempted to argue that the State had failed to meet its burden of proof as to any of the robbery offenses, then the court would not instruct the jury on duress as to those offenses. Id. at 126. Defense counsel objected to the court's ruling. In closing, defense counsel did not argue that the State had failed to meet its burden of proof as to Frost's robbery offenses. Instead, defense counsel limited his argument to the affirmative defense of duress.
¶ 7 In closing, the prosecutor repeatedly mentioned the State's burden of proof as to Frost's robbery offenses. Id. at 148-49, 152, 160. Likewise, the jury was properly instructed on the State's burden of proof in general, as well as the requirements to prove accomplice liability in particular. See Clerk's Papers (CP) at 178, 180. A jury found Frost guilty of all of the charged offenses except one assault. Frost was sentenced to more than 50 years' imprisonment, including the consecutive firearms enhancements.
¶ 8 Frost appealed his convictions to Division One of the Court of Appeals. His claims included (1) prosecutorial vindictiveness, (2) erroneous admission of his statements, and (3) erroneous limitation of defense counsel's argument of inconsistent defenses. In an unpublished decision, the Court of Appeals *365 rejected all of Frost's claims. State v. Frost, noted at 128 Wash.App. 1026, 2005 WL 1579705, 2005 Wash.App. LEXIS 1570. Review by this court was granted only on the issue of the trial court's limitation of defense counsel's closing argument. State v. Frost, 158 Wash.2d 1001, 143 P.3d 828 (2006).

ANALYSIS
A. Standard of Review
¶ 9 This court reviews a trial court's action limiting the scope of closing argument for abuse of discretion. State v. Perez-Cervantes, 141 Wash.2d 468, 475, 6 P.3d 1160 (2000). This court will find that a trial court abused its discretion "`only if no reasonable person would take the view adopted by the trial court.'" Id. (quoting State v. Huelett, 92 Wash.2d 967, 969, 603 P.2d 1258 (1979)).
B. Trial Court Authority to Limit the Scope of Closing Argument
¶ 10 At trial, Frost's counsel sought to argue both that the State failed to prove accomplice liability as to Frost's robbery offenses and that Frost acted under duress in committing these offenses. The trial court ruled, relying on language in this court's decision in Riker, 123 Wash.2d 351, 869 P.2d 43, that defense counsel could not argue these inconsistent theories in closing. Frost now argues that the trial court abused its discretion and violated his constitutional rights by limiting the scope of his counsel's closing argument. The State counters that the trial court acted within its discretion.
¶ 11 We hold that the trial court erroneously interpreted our decision in Riker and, based on that erroneous interpretation, unduly limited the scope of Frost's counsel's closing argument, thus abusing its discretion. However, we ultimately conclude that the trial court's error was harmless.
1. Trial courts possess discretion to limit the scope of closing argument; however, undue limitations may infringe upon defendants' Sixth Amendment and due process rights
¶ 12 It is well established that trial courts possess broad discretionary powers over the scope of counsel's closing arguments. Herring v. New York, 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); Perez-Cervantes, 141 Wash.2d at 474-75, 6 P.3d 1160; City of Seattle v. Erickson, 55 Wash. 675, 677, 104 P. 1128 (1909). As explained by this court:
"The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. . . . He may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. In all these respects he must have broad discretion."
Perez-Cervantes, 141 Wash.2d at 474-75, 6 P.3d 1160 (quoting Herring, 422 U.S. at 862, 95 S.Ct. 2550). This court has emphasized that "the trial court should `in all cases . . . restrict the argument of counsel to the facts in evidence.'" Id. at 475, 6 P.3d 1160 (alteration in original) (quoting Sears v. Seattle C.S.R. Co., 6 Wash. 227, 233, 33 P. 389, 33 P. 1081 (1893)). "Counsel's statements also must be confined to the law as set forth in the instructions to the jury." Id.
¶ 13 However, despite their broad discretion, trial courts "cannot compel counsel to reason logically or draw only those inferences from the given facts which the court believes to be logical." City of Seattle v. Arensmeyer, 6 Wash.App. 116, 121, 491 P.2d 1305 (1971). Moreover, it is generally permissible for defendants to argue inconsistent defenses so long as they are supported by the evidence. See Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); State v. Fernandez-Medina, 141 Wash.2d 448, 458-60, 6 P.3d 1150 (2000); State v. Conklin, 79 Wash.2d 805, 807, 489 P.2d 1130 (1971). Where a trial court goes too far in limiting the scope of closing argument, a defendant's constitutional rights may be implicated.
¶ 14 For instance, the United States Supreme Court has held that the Sixth Amendment right to counsel encompasses the delivery of a closing argument. Herring, 422 U.S. at 858, 95 S.Ct. 2550. The Court explained:
There can be no doubt that closing argument for the defense is the basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally *366 been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge.
Id. This court has also held that the constitutional right to be represented by counsel includes the right of counsel to argue the case to the jury. See Erickson, 55 Wash. at 677, 104 P. 1128; State v. Mayo, 42 Wash. 540, 548-49, 85 P. 251 (1906). Likewise, this court has recognized the particular importance of closing argument to the effective exercise of this right. Perez-Cervantes, 141 Wash.2d at 474, 6 P.3d 1160. Thus, where a trial court unduly limits the scope of defense counsel's closing argument, it may infringe upon a defendant's Sixth Amendment right to counsel.
¶ 15 Improper limitation of closing argument may also infringe upon a defendant's Fourteenth Amendment due process rights as set forth in In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Due process requires that the State prove every fact necessary to constitute a charged offense beyond a reasonable doubt. Id.; State v. McHenry, 88 Wash.2d 211, 214, 558 P.2d 188 (1977). Where a trial court limits argument as to any fact necessary to constitute a charged offense, the trial court may lessen the State's constitutionally required burden, thus, implicating a defendant's due process rights. See Conde v. Henry, 198 F.3d 734, 739 (9th Cir.1999) (concluding that trial court's action in limiting scope of argument as to element of crime "relieved the prosecution of its burden to prove its case beyond a reasonable doubt").
2. The trial court erred in interpreting Riker to preclude a defendant from arguing alternatively duress and that the State failed to meet its burden of proof
¶ 16 Duress is an affirmative defense, which the defendant must prove by a preponderance of the evidence. Riker, 123 Wash.2d at 368-69, 869 P.2d 43. As an affirmative defense, duress does not function to negate an element of the charged offense. Id. at 367-68, 869 P.2d 43. Rather, a finding of duress excuses the defendant's otherwise unlawful conduct. Id. Washington law specifically provides for the defense of duress at RCW 9A.16.060.[3]
¶ 17 In the present case, the trial court ruled as follows regarding the interplay between the defense of duress and the State's burden of proof:
THE COURT: You cannot argue to the jury that the state hasn't proved accomplice liability and claim a duress defense. You must opt for one or the other. Riker is very clear on this. You must admit the elements of the offense have been proved before you can use the duress offense.
[DEFENSE]: But am I not permitted to argue in the alternative, using duress and failure to prove in the alternative?
THE COURT: No. Duress is an affirmative defense. To quote Riker, a defense of duress admits that the defendant committed the unlawful act but pleas an excuse for doing so. You may not argue both. Riker wouldn't stand up if that was the ability the defense has. Once the state proves its charges the defense says it is proved and that is when you get an opportunity to raise this affirmative defense and prove it by a preponderance. I don't see any other way to write it. There are pages and pages about this.
VRP (Dec. 11, 2003) at 126-27. We reject the trial court's overbroad interpretation of our decision in Riker. In Riker, this court held that duress is an affirmative defense that the defendant must prove by a preponderance of the evidence. 123 Wash.2d at 368-69, 869 P.2d 43. In reaching this decision, *367 this court stated, "a defense of duress admits that the defendant committed the unlawful act, but pleads an excuse for doing so." Id. at 367-68, 869 P.2d 43. This court also stated, "a duress defense necessarily allows for no doubt that the defendant did the acts charged." Id. at 368, 869 P.2d 43. These statements were made in the course of rejecting the defendant's claim that she need only prove duress "`to the extent of creating a reasonable doubt in the minds of the jurors as to the [defendant's] guilt. . . .'" Id. at 367, 869 P.2d 43 (alteration in original) (quoting State v. Bromley, 72 Wash.2d 150, 155, 432 P.2d 568 (1967)). Specifically, these statements were made in support of this court's conclusion that because "[a] successful duress defense does not create a reasonable doubt that the defendant did the crime charged, but rather condones the defendant's admittedly unlawful conduct. Any burden of proof for duress which literally relies on the ability of the defendant to create a reasonable doubt would . . . be impossible to meet." Id. at 368, 869 P.2d 43. Nothing in the Riker opinion was directed toward answering the question presented in the case at bar. Yet, the trial court and the Court of Appeals treated this case as though it were dispositive. See VRP (Dec. 11, 2003) at 126-27; Frost, 2005 WL 1579705, * 7, 2005 Wash.App. LEXIS 1570, at *24.
¶ 18 Besides Riker, the Court of Appeals relied on this court's decision in State v. Mannering, 150 Wash.2d 277, 75 P.3d 961 (2003), to affirm the trial court. Frost, 2005 WL 1579705, *7, 2005 Wash.App. LEXIS 1570, at *23-24. In Mannering, this court addressed the defense of duress in the context of an ineffective assistance of counsel claim. 150 Wash.2d at 286-87, 75 P.3d 961. As part of our rationale for denying defendant's claim, this court concluded that the failure to pursue the defense of duress was strategic. Id. Specifically, this court reasoned that defendant's counsel could reasonably have decided not to raise duress because doing so would have required the defendant "to admit all of the elements of the underlying crimes," an admission that would have been inconsistent with the defendant's theory that "she lacked the intent to commit the attempted murder." Id. at 287, 75 P.3d 961. However, this court did not hold that such inconsistent defenses would have been impermissible had defense counsel sought to raise them.
¶ 19 In sum, neither Riker nor Mannering is dispositive as to the question presented in this case. While there is language in both opinions suggesting that a successful duress defense requires admitting the commission of acts constituting a crime, these cases do not necessarily stand for the proposition that a defendant must concede criminal liability to claim duress. To require such a concession would arguably run afoul of the due process requirement that the State prove each element of a charged offense beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068; Conde, 198 F.3d 734. Likewise, it would infringe upon a criminal defendant's Sixth Amendment right to have counsel make argument to the jury, at least where duress is only one of the viable defense theories. See Herring, 422 U.S. 853, 95 S.Ct. 2550.
¶ 20 In light of the above constitutional concerns, we reject the reading of Riker and Mannering adopted below and narrowly interpret this precedent as applied to the present case. Instead, we conclude that Riker stands for the proposition that a duress defense admits the unlawful act or conduct, not the crime itself.[4]
*368 ¶ 21 In sum, we hold that while a defendant may be required to admit that he committed acts constituting a crime in order to claim duress, he or she is not required to concede criminal liability. The trial court erred in ruling to the contrary.
3. Due process and the Sixth Amendment required his counsel be permitted to argue that the State failed to prove accomplice liability despite Frost's inconsistent testimony
¶ 22 Based on its erroneous interpretation of Riker, 123 Wash.2d 351, 869 P.2d 43, the trial court precluded Frost's counsel from arguing both that the State failed to meet its burden as to accomplice liability and that Frost acted under duress. Determining whether this limitation on the scope of counsel's argument constituted an abuse of discretion requires further inquiry into the evidence before the court, as well as the constitutional ramifications of the court's ruling.
¶ 23 Frost entered a plea of not guilty to all of his offenses. As explained by this court in Conklin, "[a] plea of not guilty permits all defenses, excepting insanity and prior conviction or acquittal." 79 Wash.2d at 807, 489 P.2d 1130. In light of such a plea, "[t]he state must prove each necessary element of the offense charged beyond a reasonable doubt, and defendant may challenge the state's proof at every turn." Id. Imposing a limitation on closing argument that prevents a defendant from challenging the State's burden may implicate due process. See Conde, 198 F.3d at 739, 741.
¶ 24 A trial court has the discretion, indeed the duty, "`to restrict the argument of counsel to the facts in evidence.'" State v. Woolfolk, 95 Wash.App. 541, 548, 977 P.2d 1 (1999) (quoting Sears, 6 Wash. at 233, 33 P. 389). However, the court "cannot compel counsel to reason logically or draw only those inferences from the given facts which the court believes to be logical." Arensmeyer, 6 Wash.App. at 121, 491 P.2d 1305. To attempt to compel such logic in closing argument may implicate a defendant's Sixth Amendment right to counsel. The trial court's ruling in the present case constituted an abuse of discretion in that it infringed upon both Frost's due process and Sixth Amendment rights.
¶ 25 Given the State's theory of this case, whether Frost was an accomplice to the charged robbery offenses was a necessary finding to support his convictions. See State v. Carter, 154 Wash.2d 71, 81, 109 P.3d 823 (2005). Hence, in accordance with due process, the State was required to prove the elements of accomplice liability, beyond a reasonable doubt, as to each offense. See In re Winship, 397 U.S. at 364, 90 S.Ct. 1068. By preventing counsel from arguing this point in closing, the trial court lessened the State's burden to some degree; thus, the court infringed upon Frost's due process rights. See Conde, 198 F.3d at 739, 741.
¶ 26 Moreover, while the argument that the State failed to meet its burden as to accomplice liability may have appeared illogical in light of Frost's trial testimony, the trial court did not have authority to compel counsel to argue logically. See Arensmeyer, 6 Wash.App. at 121, 491 P.2d 1305. As explained by the United States Supreme Court in Herring:
"The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument on the evidence and the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence may seem, unless he has waived his right to such argument, or unless the argument is not within the issues in the case, and the trial court has no discretion to deny the accused such right."
422 U.S. at 860, 95 S.Ct. 2550 (quoting Yopps v. State, 228 Md. 204, 207, 178 A.2d 879 (1962)). Admittedly, the State's evidence of accomplice liability in this case was particularly strong. Yet there remained an evidentiary basis, however slim, for counsel to argue that the State failed to prove Frost participated in each of his accomplices' criminal acts with adequate knowledge of promotion or facilitation. See RCW 9A.08.020(3)(a) (requirements for accomplice liability). This argument is best illustrated by the robberies in which Frost was only a *369 driver and remained in the car. As this court and the Supreme Court have recognized, closing argument "is the defendant's `last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.'" Perez-Cervantes, 141 Wash.2d at 474, 6 P.3d 1160 (quoting Herring, 422 U.S. at 862, 95 S.Ct. 2550). Because the trial court unduly limited this aspect of Frost's defense, it infringed upon his Sixth Amendment right to counsel.
¶ 27 In sum, the trial court's misinterpretation of our decision in Riker resulted in the imposition of an undue limitation on the scope of defense counsel's closing argument. This limitation infringed upon Frost's due process and Sixth Amendment rights. Thus, the trial court abused its discretion.
C. Harmless Error
¶ 28 The State posits that, assuming the trial court abused its discretion in limiting the scope of counsel's argument, its error was harmless. Frost counters that, first, harmless error review is not appropriate and, second, the trial court's error was not harmless. We hold that harmless error review is appropriate. We further hold that, under the circumstances presented, most notably the jury instructions on burden of proof for accomplice liability, the trial court's error in limiting defense counsel was harmless.
1. The trial court's error in limiting the scope of defense counsel's closing argument was not structural; thus, harmless error review is appropriate
¶ 29 Structural errors  "defect[s] affecting the framework within which the trial proceeds"  are not subject to harmless error review. Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In contrast, trial errors  those affecting "the trial process itself"  may be reviewed for harmless error. Id. Frost argues that the trial court's error in the present case "is akin to a faulty reasonable doubt instruction" and, thus, should be deemed structural in accordance with Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Suppl. Br. of Pet'r at 15. Frost also encourages this court to deem the trial court's error structural in light of the Supreme Court's recent decision in United States v. Gonzalez-Lopez, ___ U.S. ___, 126 S.Ct. 2557, 2564, 165 L.Ed.2d 409 (2006) (holding denial of Sixth Amendment right to counsel of choice not subject to harmless error analysis). We reject both of Frost's arguments.
¶ 30 First, this court has previously rejected an argument analogous to that made by Frost in the context of an erroneous accomplice liability instruction. See State v. Brown, 147 Wash.2d 330, 339, 58 P.3d 889 (2002) (holding erroneous accomplice liability instruction subject to harmless error analysis because "not every omission or misstatement in a jury instruction relieves the State of its burden"). Moreover, the reasoning from Sullivan relied upon by Frost was substantially limited by the Supreme Court in Neder v. United States, 527 U.S. 1, 11-13, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), where harmless error analysis was applied to affirm a conviction. Particularly in light of the fact that the jury here was properly instructed as to the State's burden,[5] Frost's analogy to Sullivan must be rejected.
¶ 31 Frost's attempted analogy to Gonzalez-Lopez also fails. In that case, the Supreme Court reasoned that deprivation of the right to counsel of choice is a structural error because its "`consequences . . . are necessarily unquantifiable and indeterminate.'" 126 S.Ct. at 2564 (quoting Sullivan, 508 U.S. at 282, 113 S.Ct. 2078). The Court elaborated:
Different attorneys will pursue different strategies . . . [a]nd the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the "framework within which the trial proceeds."
Id. at 2564-65 (quoting Fulminante, 499 U.S. at 310, 111 S.Ct. 1246). In contrast to the situation in Gonzalez-Lopez, a harmless error inquiry in the present case would not require this court to speculate as to "myriad *370 aspects of representation." Id. at 2564. Frost does not complain of his counsel generally, only of a single aspect of representation  one part of closing argument as to proof of accomplice liability. This court is as equipped to assess whether the trial court's mistake in limiting closing argument affected the outcome of this case as it is to conduct other harmless error analyses, such as those regarding an erroneous instruction or evidentiary decision.
¶ 32 The dissent would hold that the trial court's error is structural and, thus, requires automatic reversal rather than application of harmless error analysis. Dissent at 1. This position fails to appreciate the limits of the structural error analysis. As recently reiterated by the Supreme Court in Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 2551, 165 L.Ed.2d 466 (2006) (quoting Neder, 527 U.S. at 8, 9, 119 S.Ct. 1827):
"[M]ost constitutional errors can be harmless. [I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless error analysis. Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. In such cases, the error necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."
(alterations in original) (footnote and citations omitted) (internal quotation marks omitted). Those "rare cases" in which the Supreme Court has deemed an error structural have involved a complete denial of counsel, a biased trial judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, and a defective reasonable-doubt instruction. Recuenco, 126 S.Ct. at 2551 n. 2. In contrast, the error in the present case is not so egregious as to require automatic reversal.
¶ 33 The right to make argument through counsel is unquestionably fundamental, but the scope of argument may be limited by the trial court. Such a limitation does not necessarily "`render[] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" Recuenco, 126 S.Ct. at 2551 (quoting Neder, 527 U.S. at 9, 119 S.Ct. 1827). Rather, an erroneous limitation of the scope of closing argument merely affects the "trial process itself," Fulminante, 499 U.S. at 310, 111 S.Ct. 1246, and is analogous to the numerous other constitutional errors identified by the Supreme Court as subject to harmless error analysis. Id. at 306-07, 111 S.Ct. 1246 (listing errors subject to harmless error analysis including: jury instruction misstating an element of the offense; erroneous exclusion of a defendant's testimony regarding circumstances of his confession, restriction on a defendant's right to cross-examine a witness for bias, denial of a defendant's right to be present at all critical stages, and denial of counsel at a preliminary hearing). Accordingly, we hold that the trial court's error in limiting the scope of closing argument in the present case was not structural and is subject to harmless error analysis.
2. Under the circumstances of this case, the trial court's error was harmless
¶ 34 This court has adopted the "overwhelming untainted evidence" test as the proper standard for harmless error analysis in Washington. State v. Guloy, 104 Wash.2d 412, 426, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986). "Under the `overwhelming untainted evidence' test, the appellate court looks only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." Id. A finding of harmless error requires proof beyond a reasonable doubt that "any reasonable jury would have reached the same result in the absence of the error." Id. at 425, 705 P.2d 1182.
¶ 35 Here, the trial court's action did not taint the evidence before the jury in any way, as counsel's argument is not evidence. Thus, all the evidence of Frost's guilt, including his three taped confessions and his trial testimony, may be considered in determining whether the trial court's error was harmless. Given this evidence, we must conclude beyond a reasonable doubt that "any reasonable jury" would have convicted Frost, even absent the *371 trial court's limitation on counsel's argument. Guloy, 104 Wash.2d at 425, 705 P.2d 1182; see also State v. Berube, 150 Wash.2d 498, 509, 79 P.3d 1144 (2003) (upholding finding of harmless error as a result of erroneous accomplice liability instruction, in part, because "the record clearly support[ed] a finding that the jury verdict of conviction would be the same absent the error"). The fact the jury was properly instructed on the State's burden of proof in general,[6] as well as instructed on the specific burden of proof to establish accomplice liability,[7] supports the conclusion that the trial court's error was harmless.

CONCLUSION
¶ 36 We affirm Frost's conviction and the decision of the Court of Appeals, but under a different rationale. Specifically, we hold that while a defendant may be required to admit that he committed acts constituting a crime in order to claim duress, he is not required to concede criminal liability. In ruling to the contrary and limiting defense counsel's argument, the trial court abused its discretion. However, in light of the overwhelming evidence of Frost's guilt and the fact the jury was properly instructed, the trial court's error was harmless.
Justice TOM CHAMBERS, Justice SUSAN OWENS, Justice MARY E. FAIRHURST, and Justice BOBBE J. BRIDGE, concur.
SANDERS, J. (dissenting).
¶ 37 The majority holds the trial court improperly limited Joshua Frost's closing argument and therefore violated his Sixth Amendment right to counsel. Nevertheless, the majority claims the error was harmless. But a trial court cannot limit a defendant from arguing a legitimate defense; such action renders the entire trial unfair. We should hold this is structural error and remand for a new trial.
¶ 38 The United States Supreme Court has held a trial court's refusal to allow defense counsel to present any closing argument violates the Sixth Amendment because denying a defendant the opportunity to make final arguments on his theory of the defense denies him the right of effective assistance of counsel. Herring v. New York, 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). When discussing the importance of a closing argument, the Court said:
The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.
Id. The majority relies on Herring, among other cases, to say, "Thus, where a trial court unduly limits the scope of defense counsel's closing argument, it may infringe upon a defendant's Sixth Amendment right to counsel." Majority at ___, 161 P.3d at 366. But this language is too weak  "may" connotes such an error might not affect a defendant's Sixth Amendment right when in reality it must affect that right. A trial court is "given great latitude in controlling the duration and limiting the scope of closing summations." Herring, 422 U.S. at 862, 95 S.Ct. 2550. But if a trial judge unduly limits the closing argument, then he has strayed outside those wide boundaries and most certainly has violated the defendant's constitutional rights. That violation can never be harmless.
¶ 39 An error is structural  and not harmless  when it "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The entire framework of Frost's trial was tainted because the jury was not privy to his full defense. No aspect of an attorney's advocacy "could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." Herring, 422 U.S. at 862, 95 S.Ct. 2550. Only then can we have any reasonable assurance "the guilty [will] be convicted and the innocent [will] go free." *372 Id. In Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the Supreme Court held a defective reasonable doubt instruction demanded automatic reversal because it "vitiates all the jury's findings." Here too this error vitiates the jury's findings because we cannot know what the jury would have decided but for defense counsel's final arguments.
¶ 40 Nevertheless, the majority looks to the "`overwhelming untainted evidence'" test to claim the error was harmless. Majority at ___, 161 P.3d at 370. But we are concerned here with arguments  not evidence. A jury interprets and understands the evidence through the lens of the attorneys' final arguments. We cannot determine what evidence is or is not tainted because we do not know how the jury would have interpreted the evidence in light of the proposed arguments. If "it is impossible for courts to contemplate the probabilities any evidence may have upon the minds of the jurors," State v. Robinson, 24 Wash.2d 909, 917, 167 P.2d 986 (1946), surely too, it is impossible for courts to contemplate the probabilities a defendant's closing argument had upon the minds of the jurors.
¶ 41 In facts similar to these, the Ninth Circuit Court of Appeals held it is structural error when a court erroneously precludes the jury from hearing a defendant's full theory of the case. Conde v. Henry, 198 F.3d 734, 741 (9th Cir.1999). In Conde v. Henry, Conde had two inconsistent defenses to his kidnapping charge: (1) he was innocent of all charges; or (2) alternatively, if he was guilty of kidnapping, it was for purposes of burglary and not for robbery. Id. at 737. The trial judge refused to allow Conde to argue in closing there had not been a kidnapping. The Court said: "By preventing Conde from arguing that no robbery had occurred and that he lacked the requisite intent to rob, the trial court's order violated the defendant's fundamental right to assistance of counsel and right to present a defense, and it relieved the prosecution of its burden to prove its case beyond a reasonable doubt." Id. at 739. And most importantly, such error is never harmless:
The very framework within which the trial proceeded on the kidnapping charge prevented the defendant from presenting his theory of the defense and prevented the jury from determining whether all of the elements of kidnapping for robbery had been proved beyond a reasonable doubt. We conclude that Conde was deprived of a fair trial on the kidnapping charge.
Id. at 741; see also United States v. Monger, 185 F.3d 574, 578 (6th Cir.1999) ("[T]he district court's failure to instruct the jury on the lesser included offense of simple possession was an intrinsically harmful structural error which requires us to reverse."); United States v. Mack, 362 F.3d 597, 603 (9th Cir. 2004) ("Deprivation of counsel is a structural error. By extension, so is deprivation of the right to present closing argument." (citations omitted)).
¶ 42 Our constitution guarantees certain basic and fundamental protections to all criminal defendants, no matter how overwhelming the evidence may be. The right to present a full and proper defense is one of those guarantees.
¶ 43 I dissent.
Chief Justice GERRY L. ALEXANDER, Justice CHARLES W. JOHNSON, and Justice BARBARA A. MADSEN, concur.
NOTES
[1] U.S. Const. amend. VI.
[2] Herring v. New York, 422 U.S. 853, 858, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975).
[3] RCW 9A.16.060 provides, in relevant part:

(1) In any prosecution for a crime, it is a defense that:
(a) The actor participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the actor that in case of refusal he or she or another would be liable to immediate death or immediate grievous bodily injury; and
(b) That such apprehension was reasonable upon the part of the actor; and
(c) That the actor would not have participated in the crime except for the duress involved.
[4] A similar distinction between admitting the acts on which a charge is based and admitting criminal liability has been drawn by the Court of Appeals in its analysis of the affirmative defense of entrapment. See State v. Galisia, 63 Wash. App. 833, 836-37, 822 P.2d 303, review denied, 119 Wash.2d 1003, 832 P.2d 487 (1992). In Galisia, the court concluded that while its earlier decisions in State v. Matson, 22 Wash.App. 114, 587 P.2d 540 (1978), and State v. Draper, 10 Wash.App. 802, 521 P.2d 53 (1974), may require a defendant to admit the charged acts, they do not require admission of "the crime itself or all the elements of a crime before being entitled to an entrapment instruction." Galisia, 63 Wash. App. at 837, 822 P.2d 303; see also Mathews, 485 U.S. at 62, 108 S.Ct. 883 (holding that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment").
[5] CP at 178.
[6] CP at 178.
[7] CP at 180.