McKEOWN, Circuit Judge,
Dissenting.
“Ladies and Gentlemen of the jury, there are two separate and distinct reasons why you should find my client not guilty. Unfortunately, I may explain only one reason to you. (And a silent p.s.: I wish I could argue reasonable doubt to you, but I can’t!).” This hypothetical summation mimics the extraordinary circumstances of Frost’s closing argument, the legal equivalent of counsel having one hand tied behind his back. Due to a misunderstanding of state law, the trial judge forced Frost to “opt for one or the other” legitimate defense — arguing duress or putting the government to its burden of proof. This undisputed denial of the constitutional right to present proper argument on alternative defense theories created a Hobson’s choice that violated Frost’s Sixth Amendment Right to Counsel and his Fourteenth Amendment Due Process rights.
In Herring v. New York, the Supreme Court explained the critical importance of closing argument: “The Constitutional right of a defendant to be heard through counsel necessarily includes his right to have his counsel make a proper argument *937 on the evidence and the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence may seem.” 422 U.S. 853, 860, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (quotation marks omitted) (emphasis added). Not only that, “the trial court has no discretion to deny the accused such right.” Id. (emphasis added). It is no surprise that legal lore focuses on the centrality of closing argument — from Clarence Darrow to F. Lee Bailey, and even the television lawyer Perry Mason. Forcing Frost’s counsel to roll the dice by choosing to defend on one theory or the other set up a structural deficiency that tainted the framework of Frost’s trial. Because closing argument plays a critical role in the adversarial process, improperly restricting counsel to a solitary defense theory is both a violation of the accused’s constitutional rights and a structural error mandating a new trial. I respectfully dissent from the majority’s holding that such a denial is not structural error.
The Washington Supreme Court unanimously held that the trial court’s erroneous interpretation of defenses available under Washington law violated Frost’s constitutional rights. State v. Frost, 160 Wash.2d 765, 161 P.3d 361, 368-69 (2007). The court first noted that “it is generally permissible for defendants to argue inconsistent defenses so long as they are supported by the evidence,” id. at 365, and that the trial court here erred in precluding alternative defenses. Although “a defendant may be required to admit that he committed acts constituting a crime in order to claim duress, he or she is not required to concede criminal liability.” Id. at 368. Because Frost opted to argue a duress defense, the trial court forced him to do exactly what is prohibited — concede criminal liability on the robberies and let the government off the hook on the “beyond a reasonable doubt” standard.
The state high court recognized that “[b]y preventing- counsel from arguing this point in closing, the trial court lessened the State’s burden to some degree.” Id. at 368. Significantly, the court held that there “remained an evidentiary basis, however slim, for counsel to argue that the State failed to prove Frost participated in each of his accomplices’ criminal acts with adequate knowledge of promotion or facilitation.” Id. Frost’s claim that the prosecution had not met its burden regarding accomplice liability was “best illustrated by the robberies in which Frost was only a driver and remained in the car.” Id. at 368-69. The court concluded that the trial court’s error “resulted in the imposition of an undue limitation on the scope of defense counsel’s closing argument. This limitation infringed upon Frost’s due process and Sixth Amendment rights.” Id. at 369. The Washington Supreme Court was unanimous on this point. Nonetheless, the five-justice majority treated the error as harmless rather than structural. Id. at 369-70.
According to the four dissenting justices, “[t]he entire framework of Frost’s trial was tainted because the jury was not privy to his full defense.” Id. at 371 (Sanders, J., dissenting). Once the prosecution finished arguing that it had met its burden, Frost’s counsel’s silence on the reasonable doubt issue infected the entire trial process. Id. at 372 (the trial court’s “error vitiates the jury’s findings because we cannot know what the jury would have decided but for defense counsel’s final arguments.”). The challenge to the state court’s majority opinion, declining to find structural error by a 5-4 margin, meets the difficult standard for habeas relief under the Antiterrorism and Effective Death Penalty Act (AEDPA). See 28 U.S.C. § 2254(d)(1).
*938 Unable to circumvent the legal principle announced in Herring, the majority improperly imposes a super-AEDPA requirement that the Supreme Court have “addressed in a holding” the “restriction on the scope of closing argument.” Op. at 929-30. But see Lockyer v. Andrade, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (“Section 2254(d)(1) permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced.” (emphasis added)). The majority then goes astray in concluding that the state court’s holding as to structural error is neither contrary to nor an unreasonable application of Supreme Court law as set forth in Herring.
I. Declining to Find Structural Error is Contrary to Supreme Court Law
The Supreme Court has not equivocated: “There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial.” Herring, 422 U.S. at 858, 95 S.Ct. 2550. The Court in Herring did not grant the accused partial satisfaction by limiting the constitutional right to one particular defense theory; instead, as though anticipating the situation here, the Court used as an example the inalienable right of the defense to argue that the prosecution had not met its burden. Id. at 862, 95 S.Ct. 2550 (“for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant’s guilt.”). Interpreting Herring as limited to absolute preclusion of final argument misreads the case. Total preemption of half the legitimate defenses is tantamount to absolute preclusion of argument on half the case. Here, as in Herring, that preclusion resulted in a structural error.
A state court decision is contrary to clearly established law “if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases.” Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Although structural errors that command automatic reversal are rare, this is such a case. The Supreme Court has repeatedly stated, including in the landmark Fulminante ease, that harmless error analysis is not appropriate in cases that “contain a ‘defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.’ ” Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). According to the Court, nothing “could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.” Herring, 422 U.S. at 862, 95 S.Ct. 2550; see also United States v. Cronic, 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (recognizing structural error where “counsel was ... prevented from assisting the accused during a critical stage of the proceeding.”).
The majority upholds harmless error review by incorrectly claiming that the trial court was simply exercising its discretion in denying argument on what it considered to be mutually exclusive defenses. To the contrary, the Washington Supreme Court unanimously held that “the trial court erroneously interpreted our decision in Riker and, based on that erroneous interpretation, unduly limited the scope of Frost’s counsel’s closing argument, thus abusing its discretion.” Frost, 161 P.3d at 365. The court’s reference to abuse of discretion was legal speak for the fact that the trial court was flat wrong as a matter of law. The trial court’s restriction was not an exercise of its “great latitude in controlling the duration and limiting the scope of closing summations.” Herring, 422 U.S. *939 at 862, 95 S.Ct. 2550. Legitimate leeway to control the scope of closing argument cannot be equated with the absolute and erroneous denial of argument on a factually supported, legally available defense. When Herring is applied to the facts of this case — where the trial court did not exercise its discretion — it is clear that, with respect to the burden of proof defense, the difference “between total denial of final argument and a concise but persuasive summation, could spell the difference, for the defendant, between liberty and unjust imprisonment.” Id. at 863, 95 S.Ct. 2550.
The imposition of a total gag order on Frost’s constitutional right to argue that the prosecution had not met its burden of proof struck at the heart of the trial framework. In fact, the compounding error here — requiring concession of guilt— was far worse than the error in Herring, where counsel’s forced silence did not amount to a concession of guilt. The error at Frost’s trial was not simply “an error in the trial process itself,” but compromised counsel during a critical stage of the proceeding.
The dilemma for Frost’s counsel could not have been starker when he had to give up argument on the reasonable doubt standard — a constitutional mainstay of defense closing arguments — in exchange for a duress instruction. Because the trial court threatened to take the duress instruction “out of the case” if Frost discussed the government’s failure to meet its burden, the jury could not hear the magic words “beyond a reasonable doubt” from the mouth of defense counsel.
The prosecutor’s parroting of the reasonable doubt standard, one he claimed to have surmounted, can hardly be considered equivalent to argument from Frost’s perspective. Under the Sixth Amendment, no aspect of an attorney’s advocacy is more important than marshaling the evidence for his own side in closing. Herring, 422 U.S. at 862, 95 S.Ct. 2550. The majority fails to explain how the prosecutor’s unrestricted argument countenances deprivation of Frost’s constitutional “right to be heard in summation of the evidence from the point of view most favorable to him.” Id. at 864, 95 S.Ct. 2550. From a practical standpoint, where the right is infringed so as to excise a key defense, “[t]here is no way to know whether [the unmade arguments] in summation might have affected the ultimate judgment....” Id. As the legal maxim recognizes, defense argument here would have brought things hidden and obscure to the light of reason. Nonetheless, the majority conjectures that the jury simply “did not buy” Frost’s defense even though the defense “wisely conceded” Frost’s participation in the crime to “maintain credibility.” Op. at 931. The majority glosses over the fact that Frost’s counsel was forced by the trial court to make this so-called concession, and that the right to closing argument exists “however simple, clear, unimpeached, and conclusive the evidence may seem.” Herring, 422 U.S. at 860, 95 S.Ct. 2550.
Contrary to the governing legal principle announced in Herring, the majority holds that no structural error occurs so long as an accused is allowed to argue any one of his defense theories. Op. at 931 (“Frost was not denied the opportunity to make a closing argument — he was afforded the opportunity to argue his defense of duress.”). Nothing in Herring supports the majority’s half a loaf limitation. The state court’s holding that no structural error occurred was directly contrary to Supreme Court law as set out in Herring.
II. Declining to Find Structural Error is an Unreasonable Application of Supreme Court Law
Not only is the state court’s holding contrary to Herring, the holding also un *940 reasonably applies Herring to the particular facts of Frost’s case. We know from Williams that “[a] state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner’s case ... [is] ‘an unreasonable application of ... clearly established Federal law.’ ” 529 U.S. at 407-08, 120 S.Ct. 1495 (quoting 28 U.S.C. § 2254(d)(1)). The Washington Supreme Court correctly identified the rule in Herring, but then failed to reasonably apply it to a new set of facts. The majority compounds this error by creating a new requirement for AEDPA relief — factual identity with Supreme Court precedent — which is not the law. The Supreme Court emphasized this point in Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), where it reversed an Eleventh Circuit decision applying an improperly restrictive test under the AED-PA: “AEDPA does not ‘require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.’ Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts ‘different from those of the case in which the principle was announced.’ ” (citations omitted)
The unreasonableness of the state court’s application of Herring is underscored by our decision in United States v. Miguel, which mirrors this case. 338 F.3d 995 (9th Cir.2003). The majority brushes Miguel aside, stating that it is, by itself, insufficient to establish federal law. Op. at 932. I have no quarrel with that point, but Miguel does not exist in a vacuum; instead, it illustrates the application of the legal principle from the Supreme Court’s decision in Herring to a new set of facts. Although Ninth Circuit law alone is undisputedly not “clearly established federal law,” when such law explains clearly established Supreme Court law, it is persuasive authority that helps determine whether the state court unreasonably applied Supreme Court law. Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir.2000).
In Miguel, we found structural error where the district court precluded defendant’s counsel from arguing a defense theory. 338 F.3d at 1003. Because the district court erroneously believed that there was no evidence that anyone other than defendant had fired the gun, it foreclosed this line of argument. Id. at 999. Relying on Herring, we stated: “Because reasonable inferences from the evidence supported the defense theory, the court erred in precluding counsel from arguing his theory and in instructing the jury that no evidence supported it. Such an error is structural and requires reversal under our precedent.” Id. at 1001; see also Conde v. Henry, 198 F.3d 734, 739 (9th Cir.1999) (granting pre-AEDPA habeas relief because of both structural error and a violation of the right to counsel when the state court precluded counsel “from arguing his theory of the defense in closing arguments.”).
In Frost’s case, the trial court declined to allow alternative defense arguments based on an erroneous understanding of state law and on its misapprehension of the factual predicate for a duress defense. Miguel, which raises an identical theory preclusion issue, delineates the metes and bounds of the structural error principle set forth in Herring: absolute preclusion of closing argument on a legitimate defense theory is a constitutional error that undermines the structure of the trial process. The majority sidesteps this reality by inappropriately invoking its newly-created “identical facts” requirement and offering up the rationale that Miguel’s reading is not “the only reasonable reading of Herring.” Op. at 933. On the facts here, the majority’s reading is unreasonable under AEDPA. The majority also mischaracter *941 izes this argument as one where “[t]he logical extension of the dissent’s rule would be to declare structural error and automatic reversal any time a trial judge placed limits on closing arguments.” Op. at 932. Not so. The rule at issue relates to the total denial of closing argument on a legitimate theory, not to discretionary limits on the argument.
To make matters worse, the paramount nature of the defense argument that was foreclosed — the government’s burden of proof — strikes at the heart of the right to counsel. The Supreme Court has repeatedly stated that “the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). “[Ejven when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt.” Cronic, 466 U.S. at 656 n. 19, 104 S.Ct. 2039. Indeed, “if counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.” Id. at 659, 104 S.Ct. 2039.
Our decision in United States v. Swanson, based on principles derived from the above Supreme Court cases, further demonstrates the unreasonable application of Herring to the facts here. 943 F.2d 1070 (9th Cir.1991). In Swanson, we reversed a conviction because defense counsel conceded that the government had met its burden of proof. We wrote that the concession “lessened the Government’s burden of persuading the jury” and caused a “breakdown in our adversarial system.” Id. at 1074. A new trial was required because counsel’s “conduct tainted the integrity of the trial.” Id. Prejudice was presumed because the concession that the prosecution had met its burden “was an abandonment of the defense of his client at a critical stage of the criminal proceedings.” Id.
Frost’s concession of guilt here is no different than the ineffective counsel in Swanson who voluntarily conceded guilt. In truth, being forced to concede guilt by the court is a far greater error with the same end result: unconstitutional lessening of the government’s burden. Such lessening of the government’s burden is structural error requiring reversal. See Sullivan v. Louisiana, 508 U.S. 275, 280, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (erroneous definition of “reasonable doubt” vitiated all of the jury’s findings because one could only speculate what a properly charged jury might have done). In denying relief, the majority conflates the improper lessening of the government’s burden of proof with Frost’s factual inability to deny that he “participated in the crime spree.” Op. at 931.
The Hobson’s choice forced upon Frost pitted one constitutional right against another — his right to put the government to its burden and his right to full and complete closing argument — thus hobbling his rights to effective counsel and due process. The trial court’s error tainted the framework of the trial by rendering Frost’s conviction speculative. Because the state court’s decision is both contrary to and an unreasonable application of Supreme Court law as set forth in Herring, I respectfully dissent.