Opinion by Judge THOMAS; Dissent by Judge TALLMAN.
OPINION
THOMAS, Circuit Judge:
The Supreme Court has instructed that preclusion of closing argument in a criminal defense trial is structural constitutional error. Herring v. New York, 422 U.S. 853, 864-65, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). Joshua Frost had two legitimate defenses to criminal charges, but the state trial court only permitted his counsel to argue one theory in closing, and the court specifically prohibited counsel from arguing that the State had not met its burden of proof. Because this conceded constitutional error requires a retrial under Herring, we reverse the district court’s denial of federal habeas relief.
I
Frost is serving a 55-year prison sentence for his convictions stemming from his involvement in five robberies that occurred over eleven days. In the first robbery, three men — Matthew Williams, Alexander Shelton, and Frost — robbed and burglarized the home of an elderly couple. Firearms were used, though Frost testified he did not carry a gun. In the second robbery, Frost acted as the driver for Shelton and Williams, who robbed a Taco Time restaurant while armed with guns. In the third robbery, Shelton, Williams, Frost, and another man participated in the robbery of an adult video store. Frost again acted as the driver and performed surveillance prior to the robbery by entering the store and asking about the closing time and other questions. In the fourth robbery, Frost acted as driver for Williams and Shelton, who robbed a 7/Eleven at gunpoint. During this incident, Shelton threatened two customers in the store’s parking lot with a gun. Finally, immediately following the 7/Eleven robbery, Frost drove Shelton and Williams to a store, *913 which they also robbed using firearms. During this robbery, an employee was shot in the hand. Police arrested Frost, Shelton, and Williams three days later. Frost was charged with six counts of robbery, one count of burglary, one count of attempted robbery, and three counts of assault. Most charges included firearms enhancements.
Frost admitted his involvement in the incidents in his trial testimony and in recorded statements to police, which were played at trial. The defense theory of the case was two-fold: there was reasonable doubt as to whether Frost’s involvement rose to the level of an accomplice and, regardless, any actions he took were under duress. Defense counsel explained both theories in his opening statement and developed both throughout the trial.
During the jury instruction conference, the trial judge responded to Frost’s proposed instruction by observing that “duress is a defense which requires the defendant to admit the elements of the crime before it can be raised.”
After some discussion about the instruction, the following colloquy occurred:
MR. WAGNILD [prosecutor]: My concern is we are going to see him get up in closing and argue, first of all, we haven’t proved accomplice liability for any of them and then saying duress.
THE COURT: If he says that[,] the duress instruction will come out of the case.
MR. STIMMEL [defense counsel]: Excuse me, your Honor?
THE COURT: You cannot argue to the jury that the state hasn’t proved accomplice liability and claim a duress defense. You must opt for one or the other. Riker is very clear on this. You must admit the elements of the offense have been proved before you can use the duress offense [sic]. Fortunately for you, your client just got on the stand and admitted everything except the assault in the second degree charge. He admitted he knew about it, he participated in every one of these events and he at least assisted by being the get away driver except for the assault in the second degree charge. I can’t believe you would disregard your chent’s testimony.
MR. STIMMEL: But am I not permitted to argue in the alternative, using duress and failure to prove in the alternative?
THE COURT: No. Duress is an affirmative defense. To quote Riker, a defense of duress admits that the defendant committed the unlawful act but pleas an excuse for doing so. You may not argue both. Riker wouldn’t stand up if that was the ability the defense has. Once the state proves its charges[,] the defense says it is proved and that is when you get an opportunity to raise this affirmative defense and prove it by a preponderance. I don’t see any other way to write it. There are pages and pages about this.
The judge concluded the discussion by again warning defense counsel not to try to argue both theories in closing. Thus, defense counsel was precluded from arguing reasonable doubt, forced to at least tacitly admit the elements of the crimes, and then put to the task of proving the duress defense by a preponderance of the evidence.
As a result, defense counsel never argued in closing that the State had failed to meet its burden of proof. He argued only that Frost acted under duress due to threats from Williams. Counsel admitted that the duress defense would not absolve Frost of one, and possibly two, of the robberies.
In his rebuttal, the prosecutor pounced on the failure of defense counsel to argue that the State hadn’t proven the elements *914 of the crime, calling it “noticeably absent,” and saying:
Because if Mr. Stimmel had pointed you to the law and pointed to the elements of the offenses and he pointed to the firearm instruction and made his argument you would realize that his argument is phoney, his arguments don’t match up with what the law is and that is really what we are here for.
The jury convicted Frost of all charges except for one assault. The court sentenced him to almost 55 years in prison. The Washington Court of Appeals affirmed Frost’s convictions. State v. Frost, 128 Wash.App. 1026 (2005) (unpublished).
The Washington Supreme Court narrowly affirmed on different grounds. State v. Frost, 160 Wash.2d 765, 161 P.3d 361, 364 (2007) (en banc). The court held that the trial judge misinterpreted its precedent to preclude Frost from arguing both that the prosecution failed to meet its burden of proof beyond a reasonable doubt and that he acted under duress. Id. at 366-67. The court noted that defendants may generally present inconsistent defenses so long as they are supported by evidence. Id. at 365. The court found an “evidentiary basis, however slim, for counsel to argue that the State failed to prove Frost participated in each of his accomplices’ criminal acts with adequate knowledge of promotion or facilitation.” Id. at 368. This argument was “best illustrated by the robberies in which Frost was only a driver and remained in the car.” Id. at 368-69.
By preventing defense counsel from making both of his legitimate arguments in his closing, the court unanimously held, the trial judge violated Frost’s Fourteenth Amendment right to due process and Sixth Amendment right to counsel. Id. at 365-66, 368-69. “[I]n accordance with due process, the State was required to prove the elements of accomplice liability, beyond a reasonable doubt, as to each offense.” Id. at 368 (citing In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). By preventing defense counsel from arguing reasonable doubt in closing, the trial judge “lessened the State’s burden to some degree” and “infringed upon Frost’s due process rights.” Id. The trial court’s “undue limitation on the scope of defense counsel’s closing argument” also violated Frost’s Sixth Amendment right to counsel under Herring, 422 U.S. at 862, 95 S.Ct. 2550, which held that a defendant is entitled to closing argument. Frost, 161 P.3d at 365-66, 369.
Nonetheless, a bare majority of the court held this error was “not so egregious as to require automatic reversal,” id. at 370, and found the error harmless, id. at 369-71. Four justices dissented, arguing that preventing defense counsel from arguing reasonable doubt was structural error under Herring. Id. at 371-72 (Sanders, J., dissenting). The Supreme Court denied certiorari. Frost v. Washington, 552 U.S. 1145, 128 S.Ct. 1070, 169 L.Ed.2d 815 (2008).
Frost filed a federal habeas petition, which the district court denied. Frost v. Van Boening, No. C09-725Z, 2011 WL 486198 (W.D.Wash. Feb. 4, 2011). A divided panel of this court affirmed. Frost v. Van Boening, 692 F.3d 924 (9th Cir.2012). A majority of the non-recused active judges voted to rehear the case en banc. Frost v. Van Boening, 707 F.3d 1143 (9th Cir.2013).
II
As the Washington Supreme Court correctly concluded, the state trial court unconstitutionally precluded defense counsel from arguing reasonable doubt, under both Herring and Winship. The only question is whether these constitutional *915 violations are subject to harmless error analysis.
The Supreme Court has divided constitutional errors into two categories: trial errors, which are subject to harmless error review, and structural errors, which require automatic reversal. Arizona v. Fulminante, 499 U.S. 279, 306-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). “[M]ost constitutional errors can be harmless.” Id. at 306, 111 S.Ct. 1246; see also id. at 306-07, 111 S.Ct. 1246 (citing examples of nonstructural errors). These errors are deemed trial errors “because the errors ‘occurred during presentation of the case to the jury’ and their effect may ‘be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless.’ ” United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (quoting Fulminante, 499 U.S. at 307-08, 111 S.Ct. 1246).
In contrast, structural errors “defy analysis by harmless-error standards because they affect the framework within which the trial proceeds, and are not simply an error in the trial process itself.” Id. (internal quotation marks and alteration omitted). Structural errors include the denial of counsel of one’s choice, id. at 150, 126 S.Ct. 2557; racial discrimination in grand jury selection, Vasquez v. Hillery, 474 U.S. 254, 263-64, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); and proceeding before a conflicted or biased judicial officer, Turney v. Ohio, 273 U.S. 510, 535, 47 S.Ct. 437, 71 L.Ed. 749 (1927). See also Washington v. Recuenco, 548 U.S. 212, 218 n. 2, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (listing other examples).
Under 28 U.S.C. § 2254(d)(1), a federal court may “grant a state prisoner’s application for a writ of habeas corpus if the state-court adjudication pursuant to which the prisoner is held resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” Howes v. Fields, — U.S. -, 132 S.Ct. 1181, 1187, 182 L.Ed.2d 17 (2012) (internal quotation marks omitted). A state court’s decision is “contrary to” clearly established Federal law if it “applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.” Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (internal quotation marks omitted). A decision is an “unreasonable application of’ federal law if it “ ‘identifies the correct governing principle from [the Supreme Court’s] decisions but unreasonably applies that principle to the facts of the prisoner’s case.’” Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).
A
In assessing whether the error in this case is structural, our task is easy because the Supreme Court has determined that Herring error is structural. Herring, 422 U.S. at 864-65, 95 S.Ct. 2550. The Supreme Court reaffirmed this aspect of Herring more recently in Bell v. Cone, 535 U.S. 685, 696 n. 3, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), which recognized that Herring did not require a showing of prejudice. Herring concerned a bench trial where the judge, pursuant to a state law, refused to allow the defense or prosecution to present closing arguments. 422 U.S. at 856, 95 S.Ct. 2550. The Supreme Court held that this denial violated Herring’s Sixth Amendment right to counsel by denying him the right to “participate fully *916 and fairly in the adversary factfinding process,” of which closing argument was a “basic element.” Id. at 858, 95 S.Ct. 2550.
The Court held that “only after all the evidence is in” are the attorneys “in a position to present their respective versions of the case as a whole.” Id. at 862, 95 S.Ct. 2550. “And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant’s guilt.” Id. (citing Winship, 397 U.S. 358, 90 S.Ct. 1068). No matter how “open and shut” the prosecution’s case may seem, there are “eases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict.” Id. at 863, 95 S.Ct. 2550. “And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel.” Id. For these reasons, we have held that preventing a defendant from arguing a legitimate defense theory constitutes structural error. United States v. Miguel, 338 F.3d 995, 1000-03 (9th Cir.2003); Conde v. Henry, 198 F.3d 734, 739 (9th Cir.2000).[1]
The denial of closing argument here was far worse than what occurred in Herring. In Herring neither the prosecution nor the defense made a closing argument. But in this ease, the judge denied Frost one of his defense theories in closing argument, while the prosecution freely argued both that it had met its burden of proof and that Frost had not established duress. Defense counsel was forced to counter this closing with “one hand tied behind his back.” Frost v. Van Boening, 692 F.3d at 936 (McKeown, J., dissenting). That denial offended the “adversary system of criminal justice” far more than the equal denial of argument in Herring. See Herring, 422 U.S. at 862, 95 S.Ct. 2550; cf. United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (“[I]f counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.”).
Precluding defense counsel from arguing a legitimate defense theory would, by itself, constitute structural error. But there is much more to the problem in this case. As the Supreme Court recognized, the Sixth Amendment violation in Herring was intertwined with the requirement under the Due Process Clause that the prosecution prove all the elements of an offense beyond a reasonable doubt, as recognized in Winship. See Herring, 422 U.S. at 862, 95 S.Ct. 2550 (citing Winship, 397 U.S. 358, 90 S.Ct. 1068). In Winship, the Supreme Court held that the Due Process Clause requires the prosecution in a criminal proceeding to prove all elements of the crime beyond a reasonable doubt. 397 U.S. at 364, 90 S.Ct. 1068. As the Court explained, “[t]he standard provides concrete substance for the presumption of innocence — that bedrock ‘axiomatic and elementary’ principle whose ‘enforcement lies at the foundation of the administration of our criminal law.’ ” Id. at 363, 90 S.Ct. 1068 (quoting Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895)). Thus, due process requires that “each element of a crime be proved to the jury beyond a reasonable doubt.” Alleyne v. United States, — U.S. -, 133 S.Ct. *917 2151, 2156, 186 L.Ed.2d 314 (2013). Simply put, “[t]he Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged.” United States v. Gaudin, 515 U.S. 506, 511, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).
As the Court recognized in Herring, the primary purpose of a defendant’s closing is to hold the State to its burden of proof. See 422 U.S. at 862, 95 S.Ct. 2550 (“[Closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant’s guilt.”).
Here, Frost wanted to argue that the State had not satisfied its burden of proving beyond a reasonable doubt that his actions satisfied the elements of accomplice liability. But he was deprived of the fundamental “right to demand that a jury find him guilty of all the elements of the crime.” Gaudin, 515 U.S. at 511, 115 S.Ct. 2310. Instead, to the contrary, the trial court instructed defense counsel that “[y]ou must admit the elements of the offense have been proved before you can use the duress [defense].” While defense counsel was prohibited from making a reasonable doubt argument, the State was given an unfettered opportunity to argue that it had proved its case beyond reasonable doubt. And the State took full advantage of that opportunity. By forcing defense counsel to concede his client’s guilt, the trial court struck at the fundamental presumption of innocence.
Not only did the trial court’s action deprive Frost of his right to “insist that his guilt be established beyond a reasonable doubt,” Herrera v. Collins, 506 U.S. 390, 398, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), it was tantamount to a directed verdict on guilt. It is axiomatic that a judge “may not direct a verdict for the State, no matter how overwhelming the evidence.” Sullivan v. Louisiana, 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); accord United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); United Bhd. of Carpenters & Joiners of Am. v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973 (1947); Sparf v. United States, 156 U.S. 51, 105, 15 S.Ct. 273, 39 L.Ed. 343 (1895). In determining whether the trial court’s action constituted a directed verdict, we look to the ruling’s effect, not its form. Cf. Martin Linen Supply Co., 430 U.S. at 571, 97 S.Ct. 1349 (noting that, rather than looking strictly at the form of the ruling, “we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged”). The record of this case leaves little doubt that the trial judge’s actions took the question of reasonable doubt away from the jury.
Winship further teaches that a defendant cannot constitutionally be tried using a lesser burden of proof. 397 U.S. at 364-65, 90 S.Ct. 1068. Due process does not permit shifting the burden of proof to the defendant by the use of conclusive or burden-shifting presumptions. Mullaney v. Wilbur, 421 U.S. 684, 703-04, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). By requiring defense counsel to concede his client’s guilt before arguing his affirmative defense, the trial court relieved the State of its burden of proving guilt beyond a reasonable doubt and shifted the burden of proof to Frost of proving his duress defense by a preponderance of the evidence. The trial court was explicit on this point. It instructed that once “the defense says [the crime] is proved ... that is when you get an opportunity to raise this affirmative defense and prove it by a preponderance.” The case was impermissibly and unconsti *918 tutionally tried to the jury with the burden of proof on Frost.[2]
In sum, there is no question that the trial court violated Frost’s due process rights under a long line of clearly established Supreme Court precedent. The trial court unconstitutionally violated Frost’s right to closing argument under Herring. Frost was deprived of his right to demand that a jury find him guilty of all the elements of the crime with which he is charged under Winship and Gaudin. The trial court’s actions in forcing defense counsel to concede guilt amounted to an unconstitutional directed verdict under Sullivan and Martin Linen Supply Co. The burden of proof was unconstitutionally shifted to Frost in violation of Winship and Mullaney. These types of errors strike at the heart of the presumption of innocence and the defendant’s right to contest that the State prove its case beyond a reasonable doubt. If the presumption of innocence is missing from a trial, then there has been no jury verdict within the meaning of the Sixth Amendment. Sullivan, 508 U.S. at 278, 113 S.Ct. 2078. Theses types of errors are unquestionably structural under Herring, Winship, and Sullivan.
B
Against this long line of Supreme Court precedent, the State still insists that precluding defense counsel from arguing reasonable doubt is a mere trial error, subject to harmless error analysis. The State relies on Herring’s unremarkable observation that trial courts have “great latitude in controlling the duration and limiting the scope of closing summations.” 422 U.S. at 862, 95 S.Ct. 2550. The State, however, ignores the import of that passage in Herring. Herring quite reasonably distinguished reasonable restrictions on closing argument from unconstitutional denials of closing argument. Reasonable restrictions on closing argument do not constitute error at all, much less constitutional error. Total preclusion of argument is constitutional error, which Herring instructs is structural error. In short, if there is Herring error, the error is structural. Absent Herring error, there is either no error at all or trial error subject to a harmlessness inquiry. The Court in Herring did not create some intermediate category of Herring error subject to harmless error analysis.
The error here was undoubtedly a Herring error despite the dissent’s contention that the “complete denial of closing argument at issue in Herring cannot be equated with the limitations on closing argument imposed in Frost’s trial.” The dissent characterizes the error as a mere limitation on the scope of Frost’s closing argument when in fact it was an absolute preemption of one of his factually supported, legally available defense theories. Finding Herring error here does not, as the dissent argues, amount to an “expansive interpretation of Herring ” and does not “infer a broader rule from Herring.” The error here amounted to a total denial of closing argument on a legitimate defense theory and is thus squarely within the Herring rule. Likewise, finding Herring error here does not create the “sub *919 stantial negative consequences” presented by the dissent, where this was not a discretionary limitation of closing argument.
Indeed, the Washington Supreme Court did not leave us in doubt as to what type of error was involved in this case. It explicitly held that the error here was Herring error, not mere trial error. It unanimously rejected the State’s attempt to distinguish Herring on the basis that the trial judge was simply exercising his discretion to place legitimate and reasonable limits on closing arguments. Instead, it expressly held that the trial court’s limitation on closing argument violated Frost’s due process and Sixth Amendment rights. Frost, 161 P.3d at 369. Once the Washington Supreme Court correctly determined that the trial judge committed Herring and Winship error, the error was necessarily structural.
In applying a harmless error review, the Washington Supreme Court majority held that it was “as equipped to assess whether the trial court’s mistake in limiting closing argument affected the outcome of this case as it is to conduct other harmless error analyses, such as those regarding an erroneous instruction or evidentiary decision.” Id. at 370, 90 S.Ct. 1068. But this reasoning contradicts Herring, which held that no matter how strong the evidence may seem, complete denial of closing argument constitutes structural error. See 422 U.S. at 863, 95 S.Ct. 2550. And a judge may not functionally direct a verdict for the State, “no matter how overwhelming the evidence.” Sullivan, 508 U.S. at 277, 113 S.Ct. 2078. By concluding it should conduct a harmless error analysis after finding structural errors, as determined by the Supreme Court in Herring and Winship, the Washington Supreme Court unreasonably applied clearly established Federal law.
Ill
The trial court infringed Frost’s Sixth and Fourteenth Amendment rights when it precluded his counsel from making a reasonable doubt argument to the jury. Frost was deprived of his right to demand that a jury find him guilty of all the elements of the crime. The trial court’s action amounted to a directed verdict of guilty. The burden of proof was unconstitutionally shifted. Frost’s right to present a closing argument was violated. These constitutional violations were structural and not subject to harmless error review. We therefore reverse the district court’s denial of Frost’s habeas petition and remand with instructions for the district court to conditionally grant the writ. We deny as moot all pending motions and decline to expand the certificate of appeala-bility.
REVERSED and REMANDED.

. Although our decisions do not constitute “clearly established Federal law” for the purposes of 28 U.S.C. § 2254(d)(1), "[o]ur cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is ‘clearly established.’ ” Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir.2000).

. The dissent argues that "the judge presented a choice to Frost as opposed to handing down a prohibition or mandate.” This is material, according to the dissent, because “had Frost unwisely pursued his failure-of-proof argument in lieu of his duress defense, these ancillary constitutional issues ... would be deprived of their supporting role.” If it were a choice, it was a Hobson’s choice, the result of which allowed the burden of proof to be shifted to Frost. The judge forced Frost to abandon one of his two defense theories, and that restriction resulted in structural errors beyond the Herring error, regardless of how the restriction is labeled and regardless of the fact that Frost could have chosen differently.