# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57239-7-II |
| Respondent, | |
| v. | |
| WILLIAM BRADLEY NORMAN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — William B. Norman appeals his conviction and sentence for second degree robbery. Norman argues the trial court erred by sustaining the State's objection during defense counsel's closing argument. Norman also argues the trial court miscalculated his offender score at sentencing. The State concedes this matter should be remanded to the trial court for resentencing. We affirm Norman's conviction but remand for resentencing.

FACTS

On April 6, 2022, Norman stole cigarettes and a bottle of whisky from a store in Vancouver, Washington. On July 11, 2022, the State charged Norman with second degree robbery. The case proceeded to a jury trial.

Two drug store employees, Zenna Bara-Amadon and Joseph Lara-Barrios, testified at trial. Amadon testified that she was working at the store on April 6. When Norman entered the store, Amadon was on her break. Amadon watched Norman walk behind the check-out counter and take cigarettes and alcohol. As Norman left the store, he told Amadon he would "blow [her] brains out." Verbatim Rep. of Proc. (VRP) at 181.

During her testimony, Amadon stated she "couldn't recall a lot of things that [Norman] was saying, but the one thing that really stood out is when he looked at me and he threatened to end our lives." VRP at 181. During cross examination, defense counsel asked Amadon whether Norman "actually stated that he was upset because his roommate had blown his brains out." VRP at 198. Amadon responded, "He didn't, I mean, I'm not sure." VRP at 198. Amadon further testified that "most of what [Norman] was saying came as muttering or mumbling." VRP at 198. But when defense counsel again asked about Norman's statement, Amadon testified that she was "100% clear that [she] heard" Norman say he would blow her brains out, and that she "didn't state anything that [she] did not clearly hear." VRP at 198.

Lara-Barrios testified he was working at the store on April 6. When Norman entered the store, Lara-Barrios was behind the check-out counter, and Norman said he would hit him if he did not move out of Norman's way.

Norman also testified at trial. During his testimony, Norman denied threatening Amadon. He explained that he was upset on April 6 because his friend had just killed himself. Norman then began another sentence with the phrase "I said—" which drew a hearsay objection from the State. VRP at 256. The trial court sustained the objection. When defense counsel asked Norman what he told the witnesses that night, the State again objected to hearsay. The trial court sustained the objection. After the objection was sustained, Norman explained that his statement about blowing brains out was not a threat but a reference to his friend's suicide.

During closing argument, defense counsel argued that Norman could not be found guilty of robbery because the State failed to prove the required element of threat of force. Specifically, she repeated Norman's earlier testimony:

2

> What Mr. Norman said, is what he told you he said. He was trying to explain to the clerks, I took the alcohol, my roommate blew his head off. And that is what had happened. It upset him. It's not an excuse. It's no excuse to go in and steal somebody's property. But he was saying to the clerks—

VRP at 334. At that point, the State objected to "[f]acts on the evidence."[1] VRP at 334. The judge responded, "Sustained." VRP at 334. Defense counsel then argued that "force or fear must be used to obtain possession or retain possession of property" and "[n]o force was used and the only threat was get out of my way." VRP at 334.

> Defense counsel referenced Norman's alleged threat once more during closing arguments:

> It is reasonable to believe that the clerks misheard what he said. You heard him testify. You heard how hard and difficult it is to understand him. So, if you're scared and you are in the position of the clerks, and someone is saying to you word to the effect of blow their head off, you're going to believe that must have been directed at me, even though[] that's not what he meant. Trying to explain why he was stealing property, does not equal a robbery.

VRP at 335. The State made no objection to these statements. Defense counsel then stated that Amadon could not "be sure that [Norman] made a threat towards her" and that he "did not say anything that would lead [the jury] to believe that this was a robbery." VRP at 336.

> The jury found Norman guilty of second degree robbery.

> Norman's sentencing hearing took place on July 28, 2022. On the day of the sentencing hearing, the State filed its sentencing memorandum with a declaration of Norman's criminal history attached. The declaration stated that Norman's criminal history included 2014 convictions in Thurston County for custodial assault, second degree assault, first degree burglary, first degree

---

[1] The State's objection was "Facts on the evidence," but Norman presumes the State meant "'facts not in evidence'" and frames the issue on appeal as if the State's objection was "facts not in evidence." VRP at 334; Br. of Appellant at 11 n.2.

robbery, and felony harassment. Based on those convictions, the State asserted that Norman's offender score was an 8.

Norman's counsel did not file a sentencing memorandum. At sentencing, the defense stated that they could not agree to the State's proposed offender score because they "didn't receive [Norman's criminal history] or the certified records of conviction in advance of the hearing." VRP at 366. The defense did not raise a specific objection to any particular conviction or method of calculation. Rather, the defense asserted that they had insufficient time to review Norman's prior criminal history and confirm "whether or not the score has been calculated properly." VRP at 363, 366.

The State responded that it had provided defense counsel with the declaration outlining Norman's criminal history on June 30. The State also stated that it provided the defense with certified copies of Norman's convictions on July 6. The State further stated that it had hard copies of Norman's certified convictions at the sentencing hearing. But because Norman and his counsel appeared remotely for sentencing, they were unable to review the State's hard copies. The State did not file the certified copies of Norman's convictions with the trial court.

The trial court offered defense counsel a one day continuance "to give [counsel] a little bit more time to review [Norman's] criminal history." VRP at 367. Defense counsel declined. The trial court agreed with the State's proposed offender score of 8. Based on an offender score of 8, the trial court imposed a standard range sentence of 53 months.

After sentencing, Norman's appellate counsel filed copies of documents related to Norman's 2014 convictions from Thurston County with the trial court. The documents showed that Norman was convicted of first degree robbery, first degree burglary, second degree assault,

4

felony harassment, and custodial assault. The documents also showed that some of Norman's 2014 convictions were deemed the same criminal conduct. Specifically, the judgment and sentence included a handwritten insertion stating that the robbery and assault charges "merge[d] for sentencing purposes" and the notation "thus an offender score of '5' vs. '7.'" Clerk's Papers at 108.

Norman appeals.

## ANALYSIS

A.    TRIAL COURT'S RULING ON STATE'S OBJECTION DURING DEFENSE COUNSEL'S CLOSING

Norman challenges the trial court's ruling sustaining the State's objection during defense counsel's closing arguments. Norman argues the ruling "was . . . an erroneous legal ruling." Br. of Appellant at 16. He also argues the ruling amounted to "an improper judicial comment on the evidence." Br. of Appellant at 16. Finally, Norman argues that the ruling unconstitutionally limited the scope of defense counsel's closing arguments.

We hold that the trial court did not abuse its discretion by sustaining the State's objection because the ruling rested on tenable grounds. Furthermore, the ruling was not an improper comment on the evidence because it did not expose the court's personal opinion on the evidence. Finally, the ruling did not improperly limit the scope of defense counsel's closing arguments because the limit was not an abuse of discretion, nor did it impermissibly lessen the State's burden.

### 1.    No Abuse of Discretion

Norman argues that the trial court abused its discretion by sustaining the State's objection to defense counsel's closing arguments. We disagree.

A trial court's ruling limiting the scope of closing argument is reviewed for an abuse of discretion. *State v. Frost*, 160 Wn.2d 765, 771, 161 P.3d 361 (2007), *cert. denied*, 552 U.S. 1145 (2008). "'A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *State v. Arndt*, 194 Wn.2d 784, 799, 453 P.3d 696 (2019) (quoting *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007)), *cert. denied*, 142 S. Ct. 762 (2021).

"While counsel has considerable latitude in closing argument, argument 'must be restricted to the facts in evidence and the applicable law, lest the jury be confused or misled.'" *State v. Goss*, 186 Wn.2d 372, 383, 378 P.3d 154 (2016) (quoting *State v. Perez-Cervantes*, 141 Wn.2d 468, 474, 6 P.3d 1160 (2000)). Therefore, "the trial court should 'in all cases . . . restrict the argument of counsel to the facts in evidence.'" *Perez-Cervantes*, 141 Wn.2d at 475 (alteration in original) (quoting *Sears v. Seattle Consol. St. Ry. Co.*, 6 Wn. 227, 233, 33 P. 389 (1893)).

Here, the trial court did not abuse its discretion by sustaining the State's objection to facts not in evidence because the court had excluded as hearsay Norman's testimony about the statement he made to the store clerks.[2] Although Norman did explain that he was upset and his statement about blowing brains out was not intended to be a threat but a reference to his friend's suicide, he did not testify as to the actual statements he made to the store clerks. Therefore, the record shows that defense counsel indeed was about to argue facts not in evidence when counsel stated, "[Norman] was saying to the clerks—." VRP at 334.

---

[2] Norman is not appealing the trial court's rulings on the State's hearsay objections. However, those hearsay objections excluded the statements defense counsel attempted to argue during closing, prompting the State's objection to facts not in evidence. It is the trial court's ruling on that objection during closing arguments that Norman appeals.

Trial courts must "'restrict [closing] argument . . . to the facts in evidence.'" *Perez-Cervantes*, 141 Wn.2d at 475 (quoting *Sears*, 6 Wn. at 233). Norman did not testify as to the statements he made to the store clerks. Thus, the State was correct that what "[Norman] was saying to the clerks" was not in evidence because the trial court had excluded as hearsay Norman's testimony about the actual statements he made to the clerks. VRP at 334. In sustaining the State's objection, the trial court simply enforced its prior hearsay rulings to ensure that the jury only considered the facts in evidence. Because the trial court's ruling was neither "manifestly unreasonable" nor based on "untenable grounds," the trial court did not abuse its discretion by sustaining the State's objection to defense counsel's closing arguments. *Arndt*, 194 Wn.2d at 799.

2.      Comment on the Evidence

Norman argues that the trial court's ruling on the State's objection during defense counsel's closing arguments constituted an improper comment on the evidence. We disagree.

The Washington State Constitution prohibits judges from "expressing to the jury [their] personal attitudes regarding the merits of the case or instructing the jury that issues of fact have been established as a matter of law." WASH. CONST. art. IV, § 16; *State v. Gouley*, 19 Wn. App. 2d 185, 197, 494 P.3d 458 (2021), *review denied*, 198 Wn.2d 1041 (2022). To determine if an alleged improper comment requires reversal, we first "examine the facts and circumstances of the case to determine whether a court's conduct or remark rises to a comment on the evidence." *State v. Bass*, 18 Wn. App. 2d 760, 802-03, 491 P.3d 988 (2021), *review denied*, 198 Wn.2d 1034 (2022). If we find "an improper comment on the evidence," it is presumed prejudicial. *Id.* at 803. The burden then shifts to "'the State to show that the defendant was not prejudiced, unless the record

7

affirmatively shows that no prejudice could have resulted.'" *Id.* (quoting *State v. Levy*, 156 Wn.2d 709, 723, 132 P.3d 1076 (2006)).

"'A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement.'" *State v. Johnson*, 152 Wn. App. 924, 935, 219 P.3d 958 (2009) (quoting *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995)). "'The touchstone of error in a trial court's comment on the evidence is whether the feeling of the trial court as to the truth value of the testimony of a witness has been communicated to the jury.'" *State v. Francisco*, 148 Wn. App. 168, 179, 199 P.3d 478 (quoting *Lane*, 125 Wn.2d at 838), *review denied*, 166 Wn.2d 1027 (2009). The purpose of the prohibition on judicial comments "is to prevent the trial judge's opinion from influencing the jury." *Lane*, 125 Wn.2d at 838.

Here, the trial court did not improperly comment on the evidence because its ruling on the State's objection during defense counsel's closing arguments was not a comment on the evidence at all. The trial court's single word ruling on the State's objection—"Sustained"—did not amount to a comment on the evidence because it did not reveal the trial court's attitude towards the merits of Norman's case. VRP at 334. As discussed above, rather than influence the jury's opinion of the case, the trial court's ruling simply enforced its earlier evidentiary rulings. This ensured that the jury considered only the evidence properly before it, and the ruling did not otherwise communicate to the jury the trial court's opinion on the veracity or merit of Norman's case.

Norman relies on *City of Seattle v. Arensmeyer*, 6 Wn. App. 116, 491 P.2d 1305 (1971), in support of his challenge. Norman argues that in both his case and *Arensmeyer*, "the trial judge erroneously indicated during closing arguments that defense counsel was mistaken as to the

evidence admitted on an important and disputed trial issue." Reply Br. of Appellant at 3. The comparison, however, is inapt. In *Arensmeyer*, the judge openly questioned counsel's interpretation of already admitted evidence; whereas here, the trial court merely used a single word—"Sustained"—to uphold an objection and prohibit defense counsel from arguing evidence that had been excluded. 6 Wn. App. at 119-21; VRP at 334.

Because the trial court's ruling did not "reveal[] what it believed the evidence to mean," its ruling did not amount to a comment on the evidence. *Arensymeyer*, 6 Wn. App. at 121. Therefore, the trial court did not make an improper comment on the evidence when it sustained the State's objection during defense counsel's closing arguments.

    3.      Limiting the Scope of Closing Arguments

Norman argues that by sustaining the State's objection during defense counsel's closing arguments, the trial court unconstitutionally limited the scope of defense counsel's closing arguments. Specifically, Norman asserts that the trial court violated his Sixth and Fourteenth Amendment rights by sustaining the State's objection at closing arguments when he was attempting to argue that he did not threaten anyone and was "merely referencing his friend's suicide." Br. of Appellant at 20. We disagree.

The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. CONST. amend. VI. The right to counsel "includes the right to make closing argument on behalf of the defense." *State v. Osman*, 192 Wn. App. 355, 368, 366 P.3d 956 (2016); *Frost*, 160 Wn.2d at 772-73. The United States Supreme Court has noted that closing argument is the defendant's "last clear chance to persuade the trier of fact that there may be reasonable doubt." *Herring v. New York*, 422 U.S. 853, 862, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975). Thus, "[w]here a trial court

goes too far in limiting the scope of closing argument, a defendant's constitutional rights may be implicated." *Frost*, 160 Wn.2d at 772.

Limits on closing arguments also implicate a defendant's right to due process under the Fourteenth Amendment to the U.S. Constitution. *Frost*, 160 Wn.2d at 773; *Osman*, 192 Wn. App. at 369. "Due process requires that the State prove every fact necessary to constitute a charged offense beyond a reasonable doubt." *Frost*, 160 Wn.2d at 773. "Where a trial court limits argument as to any fact necessary to constitute a charged offense, the trial court may lessen the State's constitutionally required burden, thus, implicating a defendant's due process rights." *Id*.

Trial courts have broad "discretion over the scope of closing argument." *Id.* at 768. However, "the trial court should restrict the argument of counsel to the facts in evidence and the law as set forth in the instructions to the jury." *Osman*, 192 Wn. App. at 368. We review challenges to the scope of closing argument for an abuse of discretion. *Frost*, 160 Wn.2d at 771; *Perez-Cervantes*, 141 Wn.2d at 475. "'A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Arndt*, 194 Wn.2d at 799 (quoting *Lord*, 161 Wn.2d at 283-84).

Here, despite the trial court sustaining the State's objection during defense counsel's closing arguments, the trial court did not improperly limit the scope of defense counsel's closing arguments. As discussed above, the trial court's ruling merely enforced its prior rulings excluding on hearsay grounds Norman's testimony about the statements he made to the store clerks, and thus, the trial court's ruling rested on tenable grounds. The trial court did not abuse its discretion in sustaining an objection to limit defense counsel's closing argument to only the facts in evidence.

Furthermore, the trial court's ruling did not impermissibly lessen the State's burden because Norman was still allowed to argue that he never threatened the store clerks. While Norman was unable to argue in closing about the actual statements he made to the store clerks about the blowing out brains comment, he was still able to argue that the State did not prove the threat of force element required for a second degree robbery conviction. For example, Norman testified that he did not threaten the store clerks, he was able to explain during his testimony about what he meant by the blowing brains out comment, and defense counsel cross-examined the store clerks about what they did and did not hear Norman say that night. Even after the trial court sustained the State's objection to facts not in evidence, defense counsel was able use this evidence to argue Norman's central theory of the case. Specifically, defense counsel argued that it was possible the store clerks misheard what Norman said and reminded the jury they had heard Norman's explanation for his comment. And defense counsel was able to argue that Amadon could not "be sure that [Norman] made a threat towards her" and that Norman "did not say anything that would lead [the jury] to believe that this was a robbery." VRP at 336.

Defense counsel was also allowed to argue that the State had not proven the threat of force element required to convict Norman beyond a reasonable doubt. In fact, right after the trial court sustained the State's objection to facts not in evidence, defense counsel argued that "force or fear must be used to obtain possession or retain possession of property" and "[n]o force was used and the only threat was get out of my way." VRP at 334. Thus, contrary to Norman's argument, the trial court did not violate Norman's Sixth and Fourteenth Amendment rights by improperly

11

limiting the scope of defense counsel's closing arguments with its ruling sustaining the State's objection.[3]

Because the trial court did not abuse its discretion by sustaining the State's objection during defense counsel's closing arguments and Norman was still able to argue that the State had not met its burden of proving the threat of force element beyond a reasonable doubt, the trial court did not unconstitutionally limit the scope of defense counsel's closing arguments.

B.      NORMAN'S OFFENDER SCORE

Norman argues that the trial court miscalculated his offender score and asks this court to remand his case to the trial court for resentencing.  The State concedes the need for "a proper sentencing hearing where the State proves [Norman's] prior convictions exist and engages in legal argument as to why they count in his offender score."  Br. of Resp't at 6.  We accept the State's concession and remand for resentencing.

The State must prove the existence of prior convictions underlying an offender's score by a preponderance of the evidence.  *State v. Hunley*, 175 Wn.2d 901, 909-910, 287 P.3d 584 (2012).  Whether a prior felony conviction exists is a factual question.  *State v. Arndt*, 179 Wn. App. 373, 378, 320 P.3d 104 (2014).

---

[3] Norman also argues that the trial court's ruling "requires reversal unless the State can demonstrate, beyond a reasonable doubt, that any reasonable jury would have reached the same result absent the error," citing *Frost* and *Osman* in support.  Br. of Appellant at 20.  Norman is incorrect.  *Frost* and *Osman* only applied a constitutional harmless error standard because the defendants had shown that the trial court's limits on closing arguments were an abuse of discretion.  *Frost*, 160 Wn.2d at 777, 782; *Osman*, 192 Wn. App. at 377-78.  Here, Norman has not shown the trial court's ruling sustaining the State's objection was an abuse of discretion.

"[T]he trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing." RCW 9.94A.530(2). Other acceptable evidence includes certified copies of prior judgments or "comparable documents of record or transcripts of prior proceedings." *State v. Wilson*, 113 Wn. App. 122, 136, 52 P.3d 545 (2002), *review denied*, 149 Wn.2d 1006 (2003). When the record is insufficient, the sentencing court is without the necessary evidence to determine what convictions are properly included in an offender score. *See, e.g.*, *Hunley*, 175 Wn.2d at 911, 912 (noting that our supreme court "ha[s] vacated sentences on multiple occasions where the State failed to provide sufficient evidence of prior convictions," and that "'a prosecutor's assertions are neither fact nor evidence, but merely argument'" (quoting *State v. Ford*, 137 Wn.2d 472, 483 n.3, 973 P.2d 452 (1999))); *In re Adolph*, 170 Wn.2d 556, 566, 243 P.3d 540 (2010) (the State, not the defendant, has the obligation to assure that the record before the sentencing court supports the criminal history determination). Where the State fails to prove a defendant's criminal history by a preponderance of the evidence, the reviewing court must remand for resentencing. *See State v. Cate,* 194 Wash.2d 909, 914, 453 P.3d 990 (2019) (remand for resentencing when State has failed to prove criminal history by preponderance of the evidence).

Here, the State failed to carry its burden of proof by not filing certified copies of Norman's prior judgments and sentences. Instead, the State relied on a declaration of Norman's criminal history, which was not agreed to nor acknowledged by Norman. Furthermore, defense counsel explicitly refused to stipulate to the proposed offender score. Also, the State concedes "it did not admit certified copies of the possibly contested criminal history and Norman did not sign a copy

of his criminal history agreeing to the calculation of his offender score." Br. of Resp't at 7. Therefore, we accept the State's concession and remand for resentencing.[4,5]

We affirm Norman's conviction but remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, J.

Glasgow, C.J.

---

[4] On remand, both the State and Norman should be allowed to argue their respective theories regarding Norman's criminal history and how his offender score should be calculated. RCW 9.94A.530(2); *State v. Cobos*, 182 Wn.2d 12, 15-16, 338 P.3d 283 (2014).

[5] Norman also argues that if he did not properly preserve the issue of his offender score, this court should still reach the issue under an ineffective assistance of counsel claim. However, because we remand the case for resentencing, we do not reach Norman's ineffective assistance of counsel claim.